UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH L. THORPE,

        Plaintiff,

        v.

BANNER LIFE INSURANCE CO.,

        Defendant.

Civil Action 08-00170 (HHK)

**MEMORANDUM OPINION AND ORDER**

Sarah L. Thorpe ("Thorpe"), a life insurance policy beneficiary, brings this action against Banner Life Insurance Company ("Banner") alleging that Banner breached its contract with Peter Boyle ("Boyle"), the holder of life insurance policy number 17B758759 (the "Policy") by refusing to pay benefits under the Policy to Thorpe. Thorpe also alleges a tort cause of action based on Banner's refusal to pay. Thorpe seeks a declaratory judgment that the life insurance policy issued to Boyle is valid, and also seeks to recover compensatory and punitive damages for Banner's alleged breach of contract and tortious refusal to pay under the Policy.

Before the Court is Banner's motion for summary judgment [#25]. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be GRANTED in part and DENIED in part.

**I. BACKGROUND**

In May 2004, Boyle applied for a life insurance policy with Banner. Boyle filled out a number of forms, (collectively, the "Application"), that requested information about Boyle's state of health. Boyle's representations on the Medical Examiner's Report, Part II of the Application

("Part II") are of particular importance to this case. Part II asked Boyle to answer a number of questions regarding his medical history and current state of health. Part II consists of the front and back of a single page. At the top of the front page, Part II states, "All YES answers require full details." (Def.'s Mot. Summ. J., Ex. 1 to Ex. A.) The back page of Part II requested details in connection with the insured's answers on the front page, asking the insured to "[g]ive full details for each question answered YES, including date, nature of illness or injury, number of attacks, duration, severity, treatment, results, name, address and telephone number of doctors, hospitals or clinics involved." (*Id.*) Finally, Part II required Boyle to attest that "to the best of [his] knowledge and belief, the answers recorded herein are true and complete" by signing the back page of Part II. (*Id.*)

In September 2004, Banner issued Boyle the Policy insuring Boyle's life for $1 million. Boyle named Thorpe as his beneficiary upon his death. Boyle died on January 3, 2006. The autopsy indicated that he died of cardiovascular disease. Thorpe notified Banner of Boyle's death and submitted a claim to Banner for payment according to the Policy. Upon learning of Boyle's death, Banner initiated an investigation into Boyle's medical history pursuant to the terms of the Policy, which permitted Banner to contest the Policy if the insured died within two years of the issuance of the Policy.

Banner's investigation revealed that Boyle filled prescriptions for a variety of medications in the five-year period prior to applying for the Policy and the time between applying for and being issued the Policy. Boyle filled prescriptions for pain killers, including Vicodin, Percocet and Oxycontin, as well as muscle relaxants, antidepressants, and sleep aids. Boyle did not reveal these prescriptions on his Application. At least eight different doctors prescribed these

medications for Boyle; the doctors stated they were unaware that Boyle was receiving prescriptions for other medications from other doctors.  In a letter dated February 2, 2007, Banner denied issuance of benefits under the Policy and rescinded the Policy on the grounds that Banner would not have issued the Policy had Boyle represented his true medical history in the Application.

## II.  ANALYSIS

Banner moves for summary judgment on all of Thorpe's claims.[1]  First, Banner alleges that Boyle's misrepresentations on the Application were false and material to Banner.  Second, Banner argues that the Policy never took effect because Boyle failed to meet a condition precedent; therefore, Banner could never have breached its contract with Boyle by failing to pay benefits under the Policy.  Finally, Banner asserts that its alleged failure to pay under the Policy does not assume the character of a tort, and therefore Thorpe cannot recover on her asserted tort cause of action.  Thorpe rejoins that Banner waived its right to conduct an investigation following Boyle's death and that the court cannot rescind the Policy or declare it invalid as a

---

[1] Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

matter of law.  Thorpe further argues that she may maintain her tort claim.  The Court addresses each argument in turn.

**A.     Choice of Law**

The parties disagree as to which law should apply to this case.  Banner argues that Maryland law applies because the Policy was issued pursuant to an application form approved for use in Maryland and because Part I of the Application was signed in Maryland.  Banner contends, however, that Maryland and District of Columbia law are substantially similar and that Banner is entitled to summary judgment under either jurisdiction's law.  Thorpe rejoins that District of Columbia law should apply because the Policy was delivered in the District of Columbia.  The Court agrees with Thorpe.

When deciding state law claims in federal court where jurisdiction is based on diversity, the court "'appl[ies] the choice-of-law rules of the jurisdiction in which'" it sits.  *Nnadili v. Chevron USA, Inc.*, 435 F. Supp. 2d 93, 97 (D.D.C. 2006) (quoting *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997)).  Under the choice of law rules in the District of Columbia, insurance contracts are governed by the substantive law of the state in which the policy is delivered.  *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996).  Here, the policy was delivered to Boyle in the District of Columbia on September 14, 2004.  (Compl. ¶ 15.)  Therefore, District of Columbia substantive law applies to this case.[2]

---

[2] Other cases state that under District of Columbia choice of law rules, the jurisdiction with the most significant interest in insurance cases is "either the place of the occurrence that requires coverage or the insured's headquarters."  *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt. Inc.*, 205 F.R.D. 1, 9 (D.D.C. 2000).  Here, the insured's "headquarters" is the District of Columbia because that is where Boyle resided.  Therefore, District of Columbia law still applies under this test.

**B.     Thorpe's Breach of Contract Claim**

Banner argues that Thorpe's breach of contract claim must fail because Banner was entitled to rescind the Policy and, in the alternative, the Policy was never valid. Thorpe disagrees and further argues that Banner waived is right to conduct an investigation following Boyle's death in the first place.

### *1.     Banner Did Not Waive its Right to Conduct an Investigation.*

As an initial matter, the court concludes that Banner did not waive its right to conduct the investigation. Thorpe argues that Banner waived its right to void the Policy because it failed to conduct more than a cursory investigation at the time Boyle applied for the Policy. Thorpe further alleges that Banner should have requested the medical records of Dr. Elion, who Boyle listed on a document not part of the formal Application, before issuing the Policy. Banner rejoins that none of Boyle's representations placed Banner on notice that he was taking the prescription medications that Banner asserts would have been material to its decision to issue the Policy. Banner is correct.

An insurer has a right to rely on the insured's statements in an insurance application. *Burlington Ins. Co.*, 398 F. Supp. 2d at 157. An insurer is also entitled to truthful responses on the insured's application. *Id.* Only where the insurer has actual knowledge of any misrepresentation at the time of application does it waive its right to conduct an investigation. For example, in *Saxe*, the insurance agent had actual knowledge that the applicant was hospitalized, even though the hospitalization was not represented on the application. 134 F.2d at 31. Although the agent failed to inform the main office of the hospitalization, the insurer was charged with actual notice of the hospitalization and therefore waived its right to rescind a policy

based on this information. *Id.*; *see also Gov't Employees Ins. Co. v. Govan*, 451 A.2d 884, 886 (D.C. 1982) (finding that where insurer had actual knowledge that the insured had misrepresented her driving record at the time of application, the insurer waived any right to void the policy on the grounds of that misrepresentation).

Here, there is no undisputed evidence that Banner had actual knowledge of Boyle's prescription medication use at the time of Boyle's Application. Moreover, there is no evidence that even if Banner had requested the medical records of Dr. Elion, it would have learned of the full extent of Boyle's prescription medication use. Therefore, the Court finds that Banner did not waive its right to conduct an investigation within the contestability period.

### 2. *The Court Cannot Conclude that Banner Was Entitled to Rescind the Policy as a Matter of Law.*

Banner contends that Boyle misrepresented his state of health on the Application by not disclosing his consultations with various doctors and his prescription medication use. Banner contends these omissions were material: had Banner known about these consultations and Boyle's prescription medication use, it would not have issued the Policy to Boyle. Therefore, Banner asserts that it was entitled to rescind the Policy and thus not required to pay out the Policy's benefits to Thorpe. Thorpe rejoins that Banner has not proven that Boyle's alleged misrepresentations were false as a matter of law or that the misrepresentations were material to Banner.

An insurance policy may be rescinded under District of Columbia law pursuant to D.C. Code § 31-4314 (2003). The statute provides:

> The falsity of a statement in the application of any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to

deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company.[3]

A false statement bars payment under the policy if the statement was made with the intent to deceive or if it materially affected the insurer's acceptance of the risk. *Johnson v. Prudential Ins. Co. of Am.*, 589 F. Supp. 30, 33 (D.D.C. 1983). Falsity and materiality may be questions of law or questions of fact, depending on the circumstances. *Prudential Ins. Co. of Am. v. Saxe*, 134 F.2d 16, 25 (D.C. Cir. 1943).

Banner alleges that some of Boyle's responses to specific questions in the Application are false as a matter of law.[4] Thorpe rejoins that the truth of Boyle's statements present a jury question, as the Court should not make credibility choices as a matter of law when Boyle attested that his answers were true to the best of his knowledge and belief.

Furthermore, Banner contends that all of Boyle's allegedly false answers were material to Banner; had Banner known the true answers, it would not have issued Boyle the Policy. Thorpe rejoins that Boyle's alleged prescription drug use and back pain were immaterial to Banner

---

[3] Maryland has enacted a substantially similar statute. *See* Md. Code Ann., Ins. § 12-207.

[4] D.C. Code § 31-4703 provides, in pertinent part, "no statements by the insured shall be used in defense of a claim under the policy unless the statements are in a written application and a copy of the statements are endorsed upon or attached to the policy when issued." D.C. Code § 31-4703(a)(3)(A)(iii). Maryland has enacted a similar statute: "Unless a copy of the application for the issuance of a life insurance . . . policy . . . is attached to or otherwise made a part of the policy or contract when issued the application is not admissible in evidence in a proceeding relating to the policy or contract." M.D. Code Ann., Ins. § 12-206(a)(2). Although the parties discuss allegedly false statements that Boyle made on documents he completed with his Application, including the Non-Medical Declarations which Banner admitted are not part of the Application or Policy, some of these documents were not included with the Policy at the time of issuance. Therefore, the Court will only consider the specific responses that were included with the Policy at the time of issuance, as laid out in Exhibit 1 to Exhibit A appended to Banner's Motion for Summary Judgment.

because its underwriters testified that they do not investigate prescription drug use and Banner's Underwriting Criteria and Requirements Manual ("Underwriting Manual") does not recommend denying an application because of back pain.

A false statement is material if it "concerns a matter which would reasonably cause the insurer to consider either not issuing the policy because of increased risk, or issuing the policy with an increased premium." *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 156 (D.D.C. 2005) (internal citation and quotation marks omitted). In other words, a false statement is material if it affects the insurer's decision as to whether and at what rate to insure the individual. *Johnson*, 589 F. Supp. at 34.

The Court will address each allegedly false answer in the Application and its materiality in turn.

### a. Question 5(c)

Question 5(c) on Part II of the Application asked, "Within the past 5 years, have you: taken any medication?" Boyle marked the box "yes." (Def.'s Mot. Summ. J., Ex. 1 to Ex. A.) As explained in Section I, *supra*, the Application required any answer of "yes" to be explained in full detail, including the "date, nature of illness or injury, number of attacks, duration, severity, treatment, results, name, address and telephone number of doctors, hospitals, or clinics involved." (*Id.*) Boyle did not list any medications on the Application where space was provided.[5] Boyle signed Part II of the Application, attesting "to the best of [his] knowledge and belief, the answers provided herein are true and complete." (*Id.*) Banner contends that Boyle's

---

[5] Banner was aware of some medication Boyle had taken because on the Non-Medical Declaration form, not included in the Policy, Boyle disclosed that he had taken Celexa for three months.

answer is false as a matter of law because Banner's investigation revealed that Boyle filled many prescriptions for a variety of medications, including pain killers, muscle relaxers, sleep aids, and antidepressants, within the five years preceding his application for the Policy. For example, Banner's investigation revealed that Boyle filled a prescription for Diazapam ten days before he signed the Application on which he declared his answers were true and complete.

Thorpe argues that Boyle's responses cannot be false as a matter of law because Boyle attested the answers were true to his knowledge and belief, so the Court must apply a subjective test into Boyle's state of mind, which is inappropriate at the summary judgment stage. Thorpe relies on *Skinner v. Aetna Life & Cas.*, 804 F.2d 148 (D.C. Cir. 1986), but this case does not stand directly for this proposition. In *Skinner*, the D.C. Circuit held that the appropriate test for determining whether an insured's answers are true or false when the insured attested the answers are true to his knowledge and belief is twofold: "whether in fact the insured believed his answer to be true, and if so, whether that belief can be reconciled with the facts within his knowledge." *Id.* at 149. In *Skinner*, the court found the insured's answers failed that test where he represented on his application he had never been treated for any sickness, disease or injury within the past five years, but his medical history revealed that he had repeatedly sought medical assistance for chest pains and breathing difficulties. The court agreed with the insured that attesting one's own answers are made to the best of his knowledge and belief creates a subjective test, but reasoned that one's own knowledge and belief is not so subjective that it can never be found false as a matter of law. The insured's represented belief is viewed in the light most favorable to him, but "only so far as that belief is not clearly contradicted by the factual knowledge on which it is based." *Id.* Thus, where the "inescapable implications" of factual knowledge clearly contradict

9

the insured's represented knowledge and belief, the Court can determine falsity as a matter of law.

The record provides sufficient evidence to determine that Boyle's answer to Question 5(c) is false as a matter of law. Boyle answered he took prescription medication but failed to disclose full and complete details. The record indicates Boyle filled a prescription for Diazapam ten days before he signed the Application and declared his answers were true and complete. Thorpe contends that Boyle's answer to Question 5(c) is not false because he answered in the affirmative, but Boyle did not provide full and complete details to his affirmative answer as required by the Application. The pharmacy records show that Boyle filled dozens of prescriptions within the five years preceding his Application that were never disclosed on his Application. The Court need not assume that he took those prescriptions, as Thorpe attested that Boyle sometimes used medication to treat his pain and help him sleep. As in *Skinner*, where the uncontradicted factual knowledge contravened the insured's attested knowledge and belief, 804 F.2d at 149, the record here clearly contradicts Boyle's representation that his answer was full and complete. Therefore, the Court determines that Boyle's answer to Question 5(c) is false as a matter of law.

The Court finds, however, that the materiality of Boyle's answer to Question 5(c) is in genuine dispute. The Senior Vice President of Underwriting at Banner attested that had Banner known of Boyle's extensive prescription drug use, Banner would not have issued the Policy. William Skelton, a Senior Underwriting Consultant for Banner, testified that overuse of pain medications, or using them other than as prescribed, can affect the applicant's health and risk of

mortality, and that the use of multiple medications by an applicant may present an addiction issue that Banner would need to rule out.

But Skelton seemingly contradicted his own testimony by stating that pain medications, used as prescribed, would have little impact on mortality. (Pl.'s Opp'n to Mot. Summ. J., Ex. 7 at 141.) Corey Dollarhide, the Banner underwriting official who worked on Boyle's Policy, testified that the fact that an applicant took prescription medication alone would not be something that would change an insured's classification. Rather, the underwriter cares about how the drugs were being taken, for what conditions they were prescribed, and whether the applicant was taking the medication under a doctor's supervision. (Pl.'s Opp'n to Mot. Summ. J., Ex. 6 at 96.) Lawrence Schneider, Banner's agent who sold Boyle the Policy, also testified that he does not expect an applicant to put down every medication because the applicant may not want to disclose it or the applicant may have forgotten about the medication. (Pl.'s Opp'n to Mot. Summ. J., Ex. 5 at 82-3.) Therefore, Banner's own testimony does not establish as a matter of law that Boyle's prescription drug use would have materially altered Banner's decision on whether and how to insure Boyle.[6]

---

[6] Banner relies heavily on the testimony of Drs. Grossman, Shaffer, and Elion to establish that Boyle's drug use is material as a matter of law because the doctors testified that had they known Boyle was seeing other doctors to obtain medication, they would have been concerned about addiction. Thorpe counters this testimony with a pharmacological expert, who testified that Boyle's prescription medication use was within the recommended therapeutic dosage, and therefore Boyle was not likely addicted to the medications. The Court, however, need not consider the testimony of Drs. Grossman, Shaffer and Elion and Thorpe's pharmacological expert because neither party has conclusively established whether Boyle was addicted to any medications. Furthermore, the testimony on whether Boyle was addicted is irrelevant: the only issue before the Court is whether Boyle's prescription medication use was material from an insurer's perspective.

The parties' expert witnesses' testimony also reveals a genuine dispute of material fact on the materiality of Boyle's prescription medication use. Thomas Holdridge, Thorpe's insurance expert, testified that a reasonable underwriter could have assessed an extra premium based on Boyle's prescription medication use if it was shown that the drugs were being abused. Holdridge also stated in his expert opinion report that had Banner known about the medications prescribed to Boyle prior to issuing the Policy, it would not have caused Banner to decline coverage to Boyle. He did, however, testify that had Boyle's prescription drug use been known, a reasonable underwriter could have assessed an extra premium for a policy.

Ross Morton, Banner's insurance underwriting expert, offers a different opinion on what a reasonable underwriter would do.[7] His expert opinion submission attests that "a reasonable underwriter . . . would have declined the application for life insurance on Mr. Boyle, had they been aware of his true medical history, especially as it relates to his use of prescription medication." (Def.'s Mot. Summ. J., Ex. B at 3.)

Finally, Banner's Underwriting Manual provides no insight into whether allegedly excessive prescription medication use would be material to Banner. Given the conflicting statements from Banner's own agents, plus the conflicting statements of the parties' expert witnesses, in conjunction with no further evidence about how Banner would evaluate prescription medication use according to its Underwriting Manual, the Court concludes that the

---

[7] Thorpe contends that Morton's testimony is inadmissible because it is unsworn. Banner rejoins that his testimony is admissible because admissibility at trial is not a prerequisite for admissibility at the summary judgment stage. The Court need not reach the merits of this argument, as Banner included a Declaration of Ross A. Morton in its reply, declaring his statements are true and correct and are within his personal knowledge.

materiality of Boyle's answer to Question 5(c) remains in genuine dispute, and therefore summary judgment is inappropriate.

### b. Question 3(k)

Question 3(k) on Part II of the Application asked, "Within the past 10 years, have you been treated or diagnosed by a member of the medical profession as having: Any bone or joint disease, arthritis, gout, backache, sciatica, loss of extremity or deformity?" Boyle marked the box "no." (Def.'s Mot. Summ. J., Ex. 1 to Ex. A.) Both parties agree that on February 26, 2004, Boyle saw Dr. Lucy Chang for muscle aches and back problems, but Dr. Chang did not treat Boyle for backache. (Pl.'s Opp'n to Mot. Summ. J., Ex. 20.) Banner alleges, however, that Boyle's nondisclosure of his visits with other doctors who prescribed him pain medication, allegedly for backache, renders his answer to Question 3(k) false as a matter of law. Thorpe rejoins that Boyle did not consider his interactions with the other doctors who prescribed him pain medication as formal treatments or consultations, but rather regarded them as informal interactions. Thorpe also claims that Boyle disclosed a visit with Dr. Elion on a form not part of the formal Application; therefore, Banner was on notice and should have requested medical records from Dr. Elion.

The record indicates that some doctors treated Boyle for back pain. Dr. Shaffer testified that Boyle had "chronic pain in his low back" and that Dr. Shaffer treated this pain. (Def.'s Mot. Summ. J., Ex. N at 11.) Dr. Grossman also testified that he treated Boyle "if his back or neck was bothering him." (Def.'s Mot. Summ. J., Ex. M at 8.) Thorpe also attested that Boyle "sometimes took medication when he was experiencing musculoskeletal aches and pains." (Pl.'s Opp'n to Mot. Summ J., Ex. 1 ¶ 9.) This uncontroverted evidence negates Boyle's answer that

he was not treated within the past ten years for backache. Therefore, Boyle's answer to Question 3(k) is false as a matter of law. *See Skinner*, 804 F.2d at 152.

The Court, however, concludes that the materiality of Boyle's answer to Question 3(k) remains in genuine dispute. Banner's Underwriting Manual does not require a report from a doctor if the patient has been treated by or has consulted with a physician regarding back pain. Moreover, Dollarhide testified that back pain is not a condition that raises any red flags in the underwriting process nor is it something Banner would investigate in connection with determining a policy classification. Holdridge also testified that Boyle's history of chronic low back pain would not have required an insurance company to charge an extra premium or decline coverage. Therefore, summary judgment is inappropriate as to the materiality of Boyle's answer to Question 3(k).

### c. Question 6(a)

Question 6(a) on Part II of the Application asked, "Are you: now being treated by a physician or other licensed medical practitioner?" Boyle marked the box "yes." (Def.'s Mot. Summ. J., Ex. 1 to Ex. A.) Boyle listed Dr. Chang as the physician who was currently treating him. (Def.'s Mot. Summ. J., Ex. 1 to Ex. A.) Banner maintains that Boyle's failure to disclose his treatment by the other doctors who prescribed him medication renders his answer false as a matter of law. Thorpe rejoins that Banner was at least on notice about some of Boyle's visits to Dr. Elion because Boyle disclosed his visits on a form not part of the formal Application. Thorpe also maintains that it is disputed whether Boyle would have understood this question to require him to list informal consultations with the doctors who prescribed him medication.

The Court cannot find Boyle's answer to Question 6(a) false as a matter of law. While it is true that the Application asked for "full and complete" details, Schneider testified that it is rare to put down on an application a second doctor who is currently treating the applicant if the first doctor has all of the information about the applicant.

Even if Boyle's answer is false as a matter of law, the Court cannot find it to be material as a matter of law. Skelton testified that had Banner known that Boyle was being treated by multiple doctors and receiving prescriptions for pain medication, it would have affected Skelton's underwriting decision because "doctor shopping," or receiving prescriptions from multiple doctors without each doctor's knowledge, is indicative of an addiction issue that needs to be underwritten. Schneider's testimony, however, puts materiality in genuine dispute. If the "general practice with other insurance agents," and specifically Schneider's practice as Banner's insurance agent, is not to list multiple doctors, then Banner's assertion that had it known of all of the other doctors treating Boyle, it would not have issued the Policy, is placed in dispute. Skelton's testimony affirmed this position when he testified that it is up to the underwriters, as a matter of discretion, to request records from a second doctor identified in the Application. Therefore, summary judgment is inappropriate on the materiality of Boyle's answer to Question 6(a).

### 3. *The Condition Precedent Upon Which Banner Relies Does Not Render the Policy Invalid.*

Banner alleges that even if it was not entitled to rescind the Policy, Boyle failed to meet a valid condition precedent in order for the Policy to be effective in the first place. Thorpe rejoins that the condition precedent on which Banner relies would render statutes that limit an insurance

company's right to rescind a policy null and void, and is therefore invalid. The Court agrees with Thorpe.

Banner contends that Boyle failed to meet the condition precedent that "only if the person(s) to be insured is (are) actually in the state of health and insurability represented in Parts I and II of this application and any supplements thereto" will the Policy take effect. (Def.'s Mot. Summ. J., Ex. 2 to Ex. A.) Banner alleges that Boyle was not in the state of health represented on the Application because he failed to disclose his history of prescription drug use and various medical consultations both in the period prior to the Application and in the period between the Application and the delivery of the Policy.

The Court finds that the condition precedent upon which Banner relies is invalid. While persuasive, the cases applying Virginia law to which Banner points are not binding rules of decision for this Court. Looking to District of Columbia law on point, the Court concludes the D.C. Circuit's decision in *Saxe*, 134 F.2d 16, is binding. In *Saxe*, the insurer relied on a condition precedent requiring statements to be true before the insurance policy took effect. 134 F.2d at 24-25. There, the court reasoned that any misstatement would keep the policy from taking effect and therefore nullify the protections for the insured in D.C. Code § 31-4314, which forbids an insurance company from voiding a policy on any misrepresentation unless the misrepresentation was made with the intent to deceive or was material to the insurer's decision making process.[8] *Id.* at 25. Because the condition precedent nullified the governing District of Columbia statute, the court held that it was invalid. *Id.*

---

[8] At the time the *Saxe* decision was rendered, the applicable District of Columbia statute was D.C. Code § 35-414. The currently applicable statute, § 31-4314, and § 35-414 are essentially identical.

The same reasoning applies here. Under Banner's interpretation, any misstatement, whether made in good or bad faith and whether material or immaterial to Banner, would render the Policy void because Boyle would not have been in the state of health represented on the Application. Likewise, such an interpretation would nullify the protections afforded to Boyle in D.C. Code § 31-4314, which prohibits Banner from voiding the Policy unless Boyle's misrepresentations were made with the intent to deceive or were material to Banner's decision making process. Therefore, Banner's motion for summary judgment on Thorpe's breach of contract claim must be denied because the condition precedent upon which Banner bases its motion is invalid.

**C.    Thorpe's Tortious Refusal to Pay Per the Contract Claim**

Banner contends that it is entitled to summary judgment on Thorpe's tortious refusal to pay per the contract claim because the District of Columbia does not permit a party to recover in tort for an insurance company's failure to pay benefits under an insurance contract. Thorpe rejoins that the District of Columbia permits plaintiffs to recover against insurance companies for nonpayment where the insurer was oppressive and dishonest in avoiding liability, thus breaching the duty of good faith and fair dealing inherent in every contract. Banner's position has merit.

The District of Columbia does not recognize an independent tort for bad faith breach of an insurance contract. *Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 9 (D.D.C. 2007). Nor does the District of Columbia recognize a cause of action in tort for bad faith denial of an insurance claim. *Washington v. Gov't Employees Ins. Co.*, 769 F. Supp. 383, 387 (D.D.C. 1991). Only where a breach of contract assumes the character of a willful tort can a plaintiff sustain a cause of action in tort and recover punitive damages. *Fireman's Fund Ins. Co.*, 480 F. Supp. 2d

at 12-13. The insurer's conduct must merge with an independent, recognized willful tort to permit recovery under this rule. *Id.* at 13; *see also Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (permitting recovery of punitive damages where the conduct of the breaching party assumed the character of intentional infliction of emotional distress). Because the District of Columbia does not recognize a cause of action for bad faith denial of an insurance claim, Thorpe cannot recover punitive damages in tort for any alleged breach of contract by Banner.

Thorpe maintains that she can recover compensatory and punitive damages in a breach of contract claim even where the insurer's conduct does not give rise to an independent tort. Thorpe principally relies on this Court's decision in *Central Armature Works v. Am. Motorists Ins. Co.*, 520 F. Supp. 283 (D.D.C. 1980). In that case, the court permitted the plaintiff to recover punitive damages in a breach of contract claim where the insurer's conduct was "oppressive or in willful and wanton disregard" of the insured's rights under the contract. *Id.* at 292. But the majority of case law in the District of Columbia still denies recovery of punitive damages for a breach of contract even where the breach is "willful, wanton, or malicious." *Sere*, 443 A.2d at 37 (internal citations omitted); *see also Greenwich Ins. Co. v. ICE Contractors, Inc.*, 541 F. Supp. 2d 327, 334 (D.D.C. 2008) (stating that punitive damages are unrecoverable in a breach of contract claim, even where the breach is willful, wanton, or malicious); *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1090 (D.C. 2008) (denying punitive damages even where, if proved, the breach was willful, wanton or malicious).

This Court has previously declined to extend the reasoning of *Central Armature Works* to subsequent cases, *see Fireman's Fund Ins. Co.*, 480 F. Supp. 2d at 15 (noting that *Central Armature Works* is a "questionable source of law"), and continues to do so here. Accordingly,

because the District of Columbia does not recognize a tort for bad faith denial of an insurance claim, and because Banner's conduct does not assume the character of an independent, willful tort, the Court grants summary judgment for Banner on Thorpe's tortious refusal to pay per the contract claim.

### III.  CONCLUSION

For the foregoing reasons, it is this 14th day of July 2009, hereby

**ORDERED** that defendant's motion for summary judgment [#25] is **GRANTED** as to plaintiff's tortious refusal to pay per the contract claim; and it is further

**ORDERED** that defendant's motion for summary judgment [#25] is **DENIED** as to the plaintiff's breach of contract claim.

                                            Henry H. Kennedy, Jr.
                                            United States District Judge